The next case, No. 241619, James Doe et al., Rhode Island Interscholastic League. Would counsel for the appellate please introduce themselves on the record to begin? Good morning, Your Honors. My name is Amy Yarbrough. I represent the Rhode Island Interscholastic League. Also at counsel table with me is my partner, Jessica Savino, who is also on the brief. And in the courtroom today with me, but not at counsel table, is Michael Lunney, who is the executive director of the league. If it would please the court, may I have three minutes for rebuttal? Okay. And before you start your argument, let me just, since amicus or amici are not arguing, I just want to thank them. There's amicus brace for either side. But thank you for filing these. They're always very helpful and we appreciate these. So please proceed. Thank you, Your Honor. The primary issue in this case is whether the district court erred in its Hollywood-inspired holding, quote, let the kid play, unquote, by disregarding the purpose of the league's rules and the Americans with Disabilities Act. I submit to you that it did and that the decision should be reversed. For a couple of reasons, not the least of which is that the movie relied upon by the court bears no relation to the facts of this case. You go first. You go next. I go third. Your Honor, what are the legal errors, please, that you say the district court committed? You seem to have conceded because you did not separately argue. So you seem to have conceded that both Title II and Title III apply. I had understood that your argument was that, in fact, there was no differential treatment or discrimination based on disability and that in any event it would require a fundamental alteration and impose undue hardships if the league were required on these facts not to apply its rule. Is that your argument? Yes, Your Honor. Okay. Proceed. Thank you, Your Honor. Judge Howard had a question. It was the same point. Thank you. Go ahead. Okay. Thank you, Your Honor. The court erred because it seemed to take lightly the eight-semester rule and the purposes behind the rule. The eight-semester rule is a rule that's agreed upon by all members of the league. We're talking about over 60 schools, public and private. Having these rules in place that all of these schools have agreed to promotes harmony and promotes the ability of these schools to get along with each other. Because we're talking about different types of schools, not only public and private but in different parts of the state, we're talking about students who come from all walks of life and circumstances, whether it be socioeconomic status or, as in this case, disability. The league is very well aware of the population that it serves. And for that reason, it takes every request for a waiver of the eight-semester rule or any other rule, for that matter, quite seriously. Since you talk about the waivers, I looked at the exhibits, and I think it's maybe 30 or more waivers over the years. But all those waivers, when they're granted, it's students who've only played maybe four semesters and they're allowed to play, they stay an extra year in high school, five and six or, you know, to eight. But never, if I'm not mistaken, there's never been an exception where somebody is given an eighth, I mean a ninth and tenth semester. Your Honor, that's exactly right, and that is the key issue in this case. The league has never granted a waiver that would permit a student to play more than four full years of competitive sports. Not only that, in reviewing the case law that's relied upon by the judge in the district court as well as in all of the briefs, there's not been one instance of a court finding that it is appropriate for a student to play for more than four years. In this case, John Doe had the opportunity to play four full years of competitive sports. The reason he is not eligible under the league rules is because he wants more than that. He wants to play for an additional year or two semesters. And he's, because of the injunction, he's actually played a fifth year. He's got nine and ten. That's exactly right. Let me ask you, if we were to sustain the injunction, there's no impediment unless he's 19 years old. Let's assume he's 17 and a half or almost 18. His parents could decide, well, he should stay an extra year in high school. Let's do senior year over again, and he could play 11 and 12. Or another student could come up with that argument, correct? If I understand you correctly. He's played five years. I think 19 is the cap for age. But if he is not, if he's maybe 17 and a half now, I'm not going to say what age he is, but in theory he could do a six-year high school and then play 11 and 12 semesters if there's an exception or the injunction stands, correct? In theory, yes, depending on the age rule that you've referenced, which is if a student reaches age 19 before September 1st, he or she is not eligible. But if he were to reach age 19 this year after, let's say, September 16th, he could play a six-year high school in theory and play two more semesters. He would have to seek, I suppose, a waiver of the age rule at that point because he didn't seek a waiver of the age rule here because he hadn't yet met it. And you are correct. Right now he's in his fifth year of high school. He did just complete the football season, and he is in the middle of the basketball season. Those are the two sports that he is playing this year. When does the basketball season end? It's my understanding it ends in March. Does that depend on whether you make the tournament or not? That's exactly right, Your Honor. I believe the tournament's in mid-March. Is the school in the tournament? I don't have the answer to that, Your Honor. As I read the order, he's eligible to play spring sports. So why are you saying it's just basketball? Following up on that, what if he decides to do cross-country track and field or a sport he's never done or lacrosse or some other sport? Then under the injunction, he could continue until June doing sports. That's correct, Your Honor. He can play any sport that he wants. He's chosen to play basketball. So that's why I brought it to the attention of the court. To my knowledge, he's not playing any other sports. You have been basically arguing why this would be a fundamental alteration or a real hardship on the league. I thought where we were going to start was that, in fact, there was no violation of Title II or Title III, that as your committee found, there's no causal relationship between his disability and the need to play beyond the eight-semester rule. I take it that his IEP, he is a special needs student, an IDEA student. I take it his IEP does not require that he play beyond the eight-semester. Your Honor, there's actually, he has what's called an ISP, not an IEP, as Your Honor is familiar with one being subject to federal law and another not. The ISP, Individualized Support Plan, implemented by the private school, does not require that he play sports. In the background, where it describes his background, it says that he enjoys playing sports and being a golf caddy. But nowhere in the ISP does it say that he must play sports, competitive sports, by the way, I should mention, for more than four years. He's free to play any sports he wants. He just can't compete with other schools that fall under the rules. So the district court's finding that it was recommended by medical professionals when he was out of state that he be involved in sports, you're saying that has no relevance here? The league considered that in their decision, in their detailed factual findings. But at the end of the day, it really is not, because he had already received the benefit of being able to play sports for four years. That's what is afforded to all students. He had received that. So there was no, he was otherwise not eligible. Well, he had his first year where he played sports. He had his second year. The second year was out of state where he played sports, but that's when the recommendation was made, toward the end of that year. So then he came back, enrolled as a sophomore, was required to enroll as a sophomore. There's something in your brief about rather than choosing to enroll as a junior, I mean, he wasn't, how could he have enrolled as a junior anyway? So for the second transfer from the boarding school to Rhode Island, to the private school, he was a third-year student. So by enrolling at Moses Brown, he enrolled as a sophomore. If he had enrolled at a public school, they would have required him to enroll as a junior. So there is a difference there by choosing Moses Brown. He never finished a sophomore year anywhere? Pardon? Even though he never finished a sophomore year anywhere? Well, he finished a second year. Repeating his first year? Correct. It doesn't make any sense to me. What you're saying doesn't make any sense to me. Why would they have required him to enroll as a junior when he's never completed a sophomore year? Because he was in his third year of school. Regardless, whether or not... Regardless, is there a statute or a regulation that you're aware of that says that? I don't have that information at the moment, Your Honor. If somebody is in a public school, they enroll as a ninth grader, and then they're required to repeat ninth grade. If they go to another public school, they have to skip and go to the 11th grade. See, this doesn't make any sense to me. I don't understand the point in your brief. Well, the point is that, essentially, he chose to transfer to the boarding school in New Hampshire, and then he chose to return to Rhode Island and to go to Moses Brown. He could have chosen to go to another school in New Hampshire. He could have chosen to go to another school in any state. But instead, he chose to come back to Rhode Island, where he falls under the Rhode Island League's jurisdiction. Let me ask you a question. In Rhode Island, are there high schools that are not under the League? There are very few. Okay. But if he went to one of those schools that are not, he could maybe play five years, and it would not have been an issue. It's the League ones. That's correct. The League would have not been involved in that. Thank you. You have rebuttal. Thank you. Let's hear, then, from Counsel Stone. Please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court. My name is Kevin Stone, and I represent James and Jane Doe, who brought the underlying as-applied claim under the Americans with Disabilities Act on behalf of their son, John. Counsel, can you clear something up for me? Okay. Opposing counsel says that he's eligible to play spring sports. It's her understanding that he's not going to play spring sports. He may be halfway through the basketball season. The district court found that, by all appearances, the school does not, it would not be competing for any championships. So that's what's in the record. Now tell me what's going on. I'm actually asking about mootness. Understood, Your Honor. Currently, there's two weeks left in the basketball season. My understanding is that regular season is over on 2-14. It appears by their record that John Doe's high school may qualify to compete in the playoffs in basketball. So what do we do with the district court finding? The district court's finding regarding the championship element. Yeah, the predictive finding. Yeah, I understood that to be in relation to John Doe's ability to compete with his high school in the football season and how his football season and in high school sports, it's unlike professional sports where there's some world championship at stake. Well, the district court was making the point that he's not going to take playing time away from anyone else or anyone else in any other school. And if you're telling me that they're going to be in the playoffs, that predictive finding did not eventuate. And I understand the district court had to assess it as of the time. But now what do we do with that consideration? With respect to the playing time and taking playing time from other students, I think the district court's finding in that respect related to John Doe's taking a roster spot from other students that would compete at his school. Well, he specifically talked about not competing for championships. So that's got to be other schools.  And I think that the key there is that John Doe's participation doesn't fundamentally alter competition in the league and that whether or not John Doe is on the offensive line on his football team in high school isn't going to automatically elevate his high school football team to a championship caliber team. And I think that's extremely important. But in basketball, it appears from what you're saying that they're going to the playoffs. And when I read the opinion, the impression is that the basketball team is probably going to have a losing record. Nothing's going to happen. And now you're telling us it's going to the playoffs. Unless they ended up like the Hoosiers and they ended up being better than everybody suspected. Sure. I think the same point is true, is that John Doe's participation on the basketball team doesn't necessarily alter his team's status to championship level team. And that's extremely important when you talk about the fundamental purposes behind the rule and whether or not... What a blow to his ego. Say again, Your Honor. I'm sorry. I said what a blow to his ego. I think the legal considerations don't... Can we please go back to the causation question? The league found that whatever his disabilities, they granted he had them. They were not causally related to an extension of the eight-semester rule. That his parents had put him in this position by causing him to repeat his freshman year. They also found that the claims of disability didn't... That the disabilities claimed did not require participation in league sports to address his disability. The fact that the parents hired some doctors who said, oh, he'd be happier if he played league sports was not enough under the Disabilities Act. So what is your response to that? So I think there's four points there, Your Honor, and I hope to address them in turn one by one. The first is regarding the legal question of causation, the by reason of disability question under the ADA. That I think the district court neatly handled by relying on the Washington case out of the Seventh Circuit, where the test was but for the individual... Yes, and your opponent says the Washington case is factually distinguishable and virtually every other court in the country faced with this situation has ruled against your position. Certainly not because the District of Connecticut relied on that case as did the District of Rhode Island. Yes, but it's de novo review for us.  And those cases, I think the principle of law is still the correct principle to apply. It's just that those cases found on those facts that the results are different, and I don't believe that the test for causation, the by reason of disability... Can you help me with that principle? Certainly. So he's taken out of a school in Rhode Island, goes to an out-of-state school, and then the decision is made to bring him to a school that's within this league. He could have gone to any number of schools in any number of leagues that maybe didn't have this rule. Am I wrong about that? You're not wrong, Your Honor. So tell me how that works. The key feature here is I think you're unfairly scrutinizing the decision of the parents. I'm asking a question. All I'm doing is asking a question. Certainly. I think the implicit in the question, however, is to ignore the fact that the parents are observing their son in a deep crisis who is now diagnosed with certain learning disabilities. And the key consideration for the parents at the time is how can I put my son in the best position to overcome his disabilities with treatment, with an individualized support plan? And that decision to bring him back to Rhode Island, have him go to school at home, is a direct result of the disabilities, how they manifested themselves while he was away at boarding school. The result here is, again, there's no issue about the disability, but it puts individuals who do have a disability in a better position than individuals who don't have that disability because they get, in theory, to play an extra year of school. That's the result, correct? Yes, Your Honor. And looking at the ADA, the ADA, what it looks is to put people, get reasonable accommodation so they can be on equal footing with non-disabled folks. What's happening here, they're getting a windfall because of that disability. As do all individuals with disabilities who require extra. I liken it to a student who has certain learning disabilities who requires more time on their SAT or ACT. I think that the ADA requires that covered entities accommodate when... So what you're saying is that the ADA would require...  In those circumstances, it is the disability itself which leads to the conclusion that the student is slower and will need extra time. What is it about the disability here that, to quote my colleagues, leads to a result where he gets preferential treatment over other students who have to comply with the eight-league rule? It's not in the ISP. That's correct. It's in all of the documentation submitted to the league for review upon John Doe's waiver request. Okay. And the trial judge basically rejected the league's analysis and said, no, I'm going to decide this de novo myself. Well, I think the trial judge is operating under the framework of the ADA where the league is not. And I think that's a crucial consideration factually for the judge is that the league requires an individual with disabilities to prove what they call an undue hardship. Now you're getting into the facial attack, aren't you? I'm not, Your Honor, because I think that it's very clear that this is an as-applied challenge, and the district court went to... Not if it's based on how the league's rules are structured. If how the league's rules are structured apply to John Doe in a certain way and the league applies its rules that might be facially neutral in a way that's... Okay, so you're disavowing the footnote. You're not relying on the footnote and the opinion. Absolutely not, Your Honor. I think that the footnote is a passing observation, and when the court says... Seems to have infected the holding. I don't believe so at all because I think that the passing comment that rules, you know, Article I, Section 16F and H as applied to John in this circumstance is when the league does not go through the type of individualized inquiry that the ADA requires, that as applied to John is what violates the ADA, and the district court's... I'm sorry. Okay. Why is it that the league, which has considered the same medical evidence and that's what they are required to do, why is it, again, that the district court gets to reject the league's conclusion and say, even though it's not in the ISP, I'm going to find, based on these other things, that it would be helpful, that it's discriminatory against him if he's not allowed to play? I think because the district court is the arbiter of whether actions by a covered entity violate the ADA and that the league is... Yes, but the league considered all of this evidence. I don't think the league considered at all, Your Honor, respectfully, whether the rule, as applied to John, is furthering its fundamental purposes. And when the purposes of the eight-semester rule, when they are meant to prevent red-shirting, there's no red-shirting here, when the rules are to prevent unfair competition... Why isn't there red-shirting here? Because John Doe is not seeking to play an extra year of sports to get recruited to play high school or gain some competitive advantage for us. But he is seeking to play an extra year of sports. But not for the purpose of getting recruited in college. The phrase red-shirting refers to those athletes that take an extra year of sport to gain a competitive advantage for their prospects in Division I or II or III recruiting in college. I'm sorry. Are you saying if there were evidence he was doing it to be recruited for college, how would that affect his ADA claim? That would make a huge difference because under the ADA, a covered entity can refuse an accommodation when it undermines the essential purposes of the rule in question. Okay. Got it. Okay. And so when there's no red-shirting, when the purpose of the rule is to prevent red-shirting and there's no red-shirting going on, when the purpose of the rule is to prevent unfair competition, and we've discussed at least briefly how John Doe is not the type of stellar athlete that's going to elevate his team to be a championship-caliber team, Is that because he's not that good, or it's because the team overall is not that good because they're making the playoffs? I think in the sense of… Or is this a scenario, obviously it's not in the record.  It appears then, if that's what you're saying, it appears then that you have Coach Norman Dale coaching the Hoosiers team and they're just blended so well they can play anybody and beat anybody even though they're under-talented. I think that the inquiry that the case law, whether it's McPherson in the Sixth Circuit, Washington in the Seventh Circuit, Sanderson in the Eighth Circuit, or Pudgeon, excuse me, the question is whether that student who's requesting the waiver is going to somehow impact competition in the league based on the purpose of the rule in question, protecting against unfair competition. And to your Honor's point, if the student was Vince Wilfork and he's an offensive lineman that has NFL potential, then perhaps this is a completely different inquiry. And the fact that that individualized inquiry isn't made apparent in any of the documents in the record, the league did not show with anything other than their single statement did not prove undue hardship that they conducted any of this inquiry. You look at all the exhibits which they say they review, which are individual to him, how can you conclude they did not do an individualized inquiry? Because they... You're working from the result backwards? Are you saying you might lose your case if they had said more about why they thought there was not a causal connection? I think if they made logical conclusions based on facts that they didn't consider, there's no evidence, Your Honor, that they considered his athletic ability, there's no evidence that they considered his skill or his team's skill. The mere sentence in the league's decision is that they did not decide that John Doe proved an undue hardship. And by that one sentence alone, most of the league's argument in the district court and in appeal seems to be an ex post facto revisionist history of what the league did when they wrote those words. I don't think that suffices, and that the district court didn't think it sufficed under the ADA when the Supreme Court has said we need to have an individualized inquiry. I think to sum, and I see my time is approaching its conclusion and its end, I think to sum up, we have to sort of zoom out and understand that participation is the key. We're talking about high school sports, and when a senior is competing with his... Participation on the field, right? That's right. Didn't the district court reject the argument that participation in a non-league sport or participation in a league team but not on the field, didn't he reject both of those? Certainly, Your Honor, because it's a fundamental difference, and if the purpose of the league is to facilitate high school sports and the student is still in high school by no fault of his own, then he should have the equal opportunity to participate with his non-disabled peers on the field. And with that, I'll end if the court has no further questions. Thank you. Thank you. Ms. Yarbrough, you have three minutes for rebuttal. Please reintroduce yourself on the record to begin. Thank you, Your Honors. Amy Yarbrough representing the Rhode Island Interscholastic League. The issue of mootness was brought up, and I do want to address that with the court. I know it's not in the briefs, but it does appear in the case law. In this case, the issue is not moot because it is an issue that is it can be repeated and can evade review. The fact that there are... When you say repeated, it means that anybody who has an ADA claim or is qualifying for the ADA could then, as I mentioned earlier, do his ninth and tenth semesters, or if somebody happens to be fairly young could end up playing six years of high school. Correct? That's correct, Your Honor. It has to be as between the parties. Your Honor, that... Mootness doctrine. Apologize. No, sorry. This is one case that was decided by the Supreme Judicial Court in Massachusetts in 2022 with facts that are similar to this one, where a student, because of a mental health disability, had to repeat a grade, and they sought a waiver of the eight-semester rule in that case. And that citation is 490 Mass. 538, Abner v. Massachusetts Interscholastic Athletic Association. And with respect to the issue of mootness, the Court said that mootness does not necessarily mean that a matter should be dismissed because it may be capable of repetition. Yes, we're familiar with the mootness rule. I would imagine your best argument is that the type of analysis used by the district court to issue the injunction here is impermissible under the ADA, and that problem will recur. Now, could you move on? That's exactly it, Your Honor. The fact that this issue... Could you move on? Anything else? What else do you have to say? Thank you, Your Honor. Okay. Okay. Court is adjourned. You're all excused. Thank you very much. Thank you, Your Honor.